Colin W. Fraser (SBN CA 266867)
GREENBERG TRAURIG, LLP
18565 Jamboree Road, Suite 500
Irvine, California 92612
Telephone: 949.732.6500
Facsimile: 949.732.6501
frasercw@gtlaw.com

Bethany Rabe (SBN CA 270682)
GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: 702.792.3773
Facsimile: 702.792.9002
rabeb@gtlaw.com

Attorneys for Plaintiff
BLUE CHIP MACHINING, INC.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLUE CHIP MACHINING, INC., a Tennessee Corporation, <br><br> Plaintiff, <br><br> v. <br><br> SCOTT MEMMER d/b/a CHARMED LIFE PICKS, a California Individual and Sole Proprietorship, <br><br> Defendant. | CASE NO. 2:25-cv-03167 <br><br> **COMPLAINT** |

Plaintiff Blue Chip Machining, Inc., for its Complaint against the Defendant, Scott Memmer, d/b/a "Charmed Life Picks" alleges as follows:

## JURISDICTION AND VENUE

1. This is an action for infringement of United States Letters Patent Number 10,366,678, which arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, and in particular 35 U.S.C. § 271 and 281. This is also an action for trademark infringement arising under 15 U.S.C. § 1114 and at common law, and for unfair competition arising under 15 U.S.C. § 1125(a) and at common law.

2. This Court has subject matter jurisdiction over Plaintiff's claims for patent infringement, trademark infringement, and unfair competition pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, 28 U.S.C. § 1338(a) and (b), and 28 U.S.C. § 1367(a).

3. Venue properly resides in this judicial district pursuant to 28 U.S.C. §1400(a) and 28 U.S.C. §1391.

4. This Court has *in personam* jurisdiction over Defendant arising out of their acts of infringement in this judicial district, and their presence and residence within this judicial district. On information and belief, the Defendant Scott Memmer, d/b/a "Charmed Life Picks," resides in this judicial district and has manufactured and sold infringing products within the State of California and in this judicial district.

## THE PARTIES

5. Plaintiff, Blue Chip Machining, Inc. ("Plaintiff"), is a corporation existing under the laws of the State of Tennessee and has a principal place of business at 211 JD Yarnell Industrial Parkway, Clinton, Tennessee 37716.

6. Upon information and belief, Defendant Scott Memmer, d/b/a "Charmed Life Picks" ("Defendant") is an individual and resident of the State of California, operating a sole proprietorship under the laws of the State of California, and has a principal place of business at 10250 Eldora Avenue, Sunland, California 91040.

**THE FACTS**

7. Plaintiff is a manufacturer and distributor of high-performance guitar picks and related products. On or about 2008, Plaintiff developed a unique, high-performance guitar pick manufactured from a particular type of polyamide material, of the type marketed and sold by DuPont Specialty Products, USA, under the trade name "Vespel."

**A.    Plaintiff's Patent Rights**

8. On July 30, 2019, United States Letters Patent Number 10,366,678 (hereinafter "the '678 Patent") was duly and legally issued to Plaintiff's President, Matthew Goins, and to Allen Goins, for a "PICK FOR USE WITH A STRINGED INSTRUMENT." A true and correct copy of the '678 Patent is attached to this Complaint as **Exhibit A**.

9. On or about July 30, 2019, Matthew Goins and Allen Goins assigned their entire interest in the '678 Patent to Plaintiff. Accordingly, Plaintiff is the owner by assignment of all right, title, and interest in and to the '678 Patent, including all rights to bring actions and recover damages for infringement thereof.

10. The '678 Patent is in full force and effect, with all necessary fees having been paid.

11. Claim 1 of the '678 Patent reads, "A pick for use with a stringed instrument, said pick being constructed of a material comprising: a polyimide material characterized by a ring-shaped molecular structure containing nitrogen, and additionally comprising graphite."

12. On information and belief, the "Vespel" polyimide material marketed and sold by DuPont Specialty Products, USA, and used in Plaintiff's guitar picks, is "a polyimide material characterized by a ring-shaped molecular structure containing nitrogen, and additionally comprising graphite."

**B.    Plaintiff's Trademark Rights**

13. The polyimide material marketed and sold by DuPont Specialty Products, USA, under the trade name "Vespel" is available to the public in multiple colors. However, Plaintiff only uses a single color of the "Vespel" polyamide material to manufacture its

guitar picks. The "Vespel" polyimide material used in Plaintiff's guitar picks exhibits a unique and distinctive brown color (hereinafter, Plaintiff's "Brown Mark").

14. Plaintiff has manufactured, marketed, and sold its guitar picks incorporating its Brown Mark in commerce throughout the United States continuously since at least as early as March 17, 2008.

15. Plaintiff has spent considerable time, money, and resources marketing, advertising, and promoting its guitar picks incorporating its Brown Mark, including through online advertising, print advertising, social media, and attendance at various trade shows and professional events.

16. The guitar picks manufactured and sold by Plaintiff incorporating Plaintiff's Brown Mark are of high quality, and Plaintiff has received extensive unsolicited media attention praising the quality of its guitar picks.

17. As a result of Plaintiff's widespread and continuous use of its Brown Mark in connection with the manufacture, marketing, and sale of its guitar picks in commerce throughout the United States, the consuming public has come to recognize Plaintiff's Brown Mark as in indication of the source of Plaintiff's guitar picks. Plaintiff's Brown Mark has come to signify the high quality of the guitar picks manufactured and sold by Plaintiff. Plaintiff's Brown Mark has thus acquired distinction, reputation, and goodwill in the minds of the consuming public, such goodwill belonging exclusively to Plaintiff. Thus, Plaintiff owns valid and subsisting trademark rights in its Brown Mark.

18. On February 25, 2020, United States Trademark Registration No. 5,998,854 (hereinafter "the '854 Registration") was duly and legally issued to Plaintiff's President, Matthew Goins, for the Brown Mark as used on and in connection with "guitar picks." A true and correct copy of the '854 Registration is attached to this Complaint as **Exhibit B**.

19. On or about March 10, 2020, Matthew Goins assigned his entire interest in the '854 Registration and the mark reflected therein, together with the goodwill associated with the mark, to Plaintiff. Accordingly, Plaintiff is the owner by assignment of all right, title,

1  and interest in and to the '854 Registration, including all rights to bring actions and recover damages for infringement thereof.

20. The '854 Registration is in full force and effect, with all necessary renewal and maintenance documents having been filed and all necessary fees having been paid.

21. On March 10, 2020, United States Trademark Registration No. 6,009,888 (hereinafter "the '888 Registration") was also duly and legally issued to Matthew Goins for the Brown Mark as used on and in connection with "guitar picks."  A true and correct copy of the '888 Registration is attached to this Complaint as **Exhibit C**.

22. On or about March 10, 2020, Matthew Goins assigned his entire interest in the '888 Registration and the mark reflected therein, together with the goodwill associated with the mark, to Plaintiff.  Accordingly, Plaintiff is the owner by assignment of all right, title, and interest in and to the '888 Registration, including all rights to bring actions and recover damages for infringement thereof.

23. The '888 Registration is in full force and effect, with all necessary renewal and maintenance documents having been filed and all necessary fees having been paid.

**C.  Defendant's Unlawful Activities**

24. On information and belief, Defendant manufactures and sells guitar picks through its website, www.charmedlifepicks.com.  A true and correct copy of Defendant's www.charmedlifepicks.com website is attached to this Complaint as **Exhibit D**.

25. On Defendant's www.charmedlifepicks.com website, Defendant markets and sells a line of "polyimide" guitar picks under several model identifiers, including, but not necessarily limited to, the "clf-75 mm polyimide teardrop," the "clf-1.15(sb) polyimide 351 teardrop," the "clt-75ss polyimide," the "clt-90 polyimide tri," the "clt-1.125 mm polyimide tri," the "clt-1.50 mm polyimide tri," the "black aerospace .75 & 1.0 mm," and the "black aerospace 1.0 & 1.40 mm."  Defendant's polyamide guitar picks are collectively referred to herein as the "Infringing Products."

26. Defendant's www.charmedlifepicks.com website states that the Infringing Products are "100% machined and finished in the U.S.A., from genuine DuPont Vespel SP-1." *See* **Exhibit D**.

27. Additionally, on information and belief, Defendant has advertised in the past that Defendant's guitar picks are manufactured from the "same" polyamide material as Plaintiff. For example, attached hereto as **Exhibit E** is a past printout of Defendant's website, in which Defendant included a review that advertised, "Top players have compared the CL picks to Blue Chip and Red Bear, and for good reason… Charmed Life picks are handmade from those same two materials." On information and belief, Defendant has also advertised in the past that Defendant's business is "the only other company in the world that manufactures guitar picks with this famous brown stuff (DuPont Vespel). This is the identical material used by a famous maker in Tennessee." On information and belief, Defendant's past statement in its advertising regarding "a famous maker in Tennessee" is a direct reference to Plaintiff's business and products.

28. On information and belief, Defendant's Infringing Products are manufactured using the same polyamide material used in the manufacture of Plaintiff's guitar picks.

29. On information and belief, at least some of Defendant's Infringing Products incorporate the same or similar Brown Mark that is used by Plaintiff in connection with Plaintiff's guitar picks, and that is the subject of the '854 Registration, the '888 Registration, and Plaintiff's common law trademark rights.

## COUNT I – PATENT INFRINGEMENT

30. Plaintiff repeats and realleges each and every one of the above paragraphs as if fully set forth herein.

31. Defendant, without Plaintiff's authorization, is engaged in this judicial district and elsewhere in the United States in the manufacture and/or use and/or offering for sale and/or sale of its Infringing Products, and/or is contributing to and/or actively inducing others to engage in such activities, in infringement of the '678 Patent in violation of one or more sub-paragraphs of 35 U.S.C. § 271.

32. On information and belief, Defendant's Infringing Products are "picks for use with a stringed instrument," as set forth in claim 1 of the '678 Patent.

33. On information and belief, the material used in the manufacture of Defendant's Infringing Products is "a polyimide material characterized by a ring-shaped molecular structure containing nitrogen, and additionally comprising graphite," as set forth in claim 1 of the '678 Patent.

34. On information and belief, the "DuPont Vespel SP-1" material that Defendant claims is used in the manufacture of its "polyimide" guitar picks is "a polyimide material characterized by a ring-shaped molecular structure containing nitrogen, and additionally comprising graphite," as set forth in claim 1 of the '678 Patent.

35. Accordingly, on information and belief, Defendant's Infringing Goods meet each and every limitation of at least claim 1 of the '678 patent, either literally or under the doctrine of equivalents.

36. On information and belief, Defendant will continue its infringement of Plaintiff's '678 Patent unless enjoined by this Court.

37. Plaintiff notified Defendant of the '678 Patent and Defendant's infringing conduct on numerous occasions prior to the institution of this lawsuit. Additionally, Defendant has publicly admitted knowledge of the existence of Plaintiff's '678 Patent. *See* December 5, 2019 printout of http://www.acousticguitarforum.com website, attached hereto as **Exhibit F**. Defendant's infringement has thus been, and continues to be, willful and deliberate, and with conscious disregarding for the rights of Plaintiff in the '678 Patent.

38. Defendant's infringing acts have caused monetary damages to Plaintiff in an amount to be determined at trial. Defendant's infringing acts have also irreparably damaged Plaintiff, and will continue to irreparably damage Plaintiff. Unless the Court preliminarily and permanently enjoins those acts, Defendant will continue to cause Plaintiff irreparable harm for which there is no adequate remedy at law, entitling Plaintiff to injunctive relief under 35 U.S.C. § 283 and damages under 35 U.S.C. § 284.

39. Further, as a result of its willful misconduct, Defendant should be held liable to Plaintiff for enhanced damages and attorneys' fees pursuant to 35 U.S.C. § 285.

## COUNT II – TRADEMARK INFRINGEMENT

40. Plaintiff repeats and realleges each and every one of the above paragraphs as if fully set forth herein.

41. Defendant's unauthorized use in commerce of Plaintiff's Brown Mark, or of confusingly similar variations thereof, in connection with the Infringing Products is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's products, and is likely to cause consumers to believe, contrary to fact, that Defendant's products are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff. Defendant's conduct therefore constitutes trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1).

42. Upon information and belief, Defendant has committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the Brown Mark and with the willful intent to cause confusion and to trade on Plaintiff's goodwill in the Brown Mark.

43. Defendant's conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

44. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorney's fees, and costs of the action under the Lanham Act, 15 U.S.C. § 1116, 15 U.S.C. § 1117, together with prejudgment and post-judgment interest.

## COUNT III – UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

45. Plaintiff repeats and realleges each and every one of the above paragraphs as if fully set forth herein.

46. Defendant's unauthorized use in commerce of Plaintiff's Brown Mark, or of confusingly similar variations thereof, as alleged herein is likely to deceive consumers as to

the origin, source, sponsorship, or affiliation of Defendant's products, and is likely to cause consumers to believe, contrary to fact, that Defendant's products are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.

47. Defendant's unauthorized use in commerce of the Brown Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

48. Upon information and belief, Defendant's conduct as alleged herein is willful, and is intended to, and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff.

49. Defendant's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

50. Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

51. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under the Lanham Act, 15 U.S.C. § 1116, 15 U.S.C. § 1117, together with prejudgment and post-judgment interest.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment as follows:

1. That the Court enter judgment in favor of Plaintiff finding that United States Letters Patent Number 10,366,678 has been infringed by Defendant;

2. That a permanent injunction issue restraining and enjoining Defendant and each of their officers, agents, servants and employees from further acts of infringement of the '678 patent;

3. That Defendant be required to account for all of its gains, profits, and advantages realized from its infringement and unlawful use and practice of the '678 patent;

4. That the Plaintiff be awarded actual damages against Defendant for its acts of patent infringement;

5. That Plaintiff be awarded an amount adequate to compensate it for such infringement and not less than a reasonable royalty for the use made by Defendant of the invention covered by the '678 patent, together with interest and costs as fixed by this Court, as provided by 35 U.S.C. §284, such use including, but not limited to, the marketing and sale of other components which could reasonably be anticipated to have been sold along with products incorporating the invention of the '678 patent;

6. That Plaintiff be awarded pre-judgment interest on any damages award to Plaintiff;

7. That Plaintiff be awarded treble damages on account of the willful, intentional, and deliberate character of Defendant's infringing acts, as provided by 35 U.S.C. §284;

8. That Plaintiff be awarded its attorney fees and costs, as provided by 35 U.S.C. §285;

9. That the Court find that Defendant has violated Section 32 of the Lanham Act (15 U.S.C. § 1114) and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a));

10. That the Court grant an injunction temporarily, preliminarily, and permanently enjoining the Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

    a. manufacturing, distributing/providing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute/provide, sell, market, advertise or promote Defendant's goods bearing the Brown Mark or any other mark, domain name or metatag that uses the Brown Mark and/or is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Brown Mark;

b. engaging in any activity that infringes Plaintiff's rights in the Brown Mark;

c. engaging in any activity constituting unfair competition with Plaintiff;

d. making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendant's products are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or (ii) Plaintiff's products are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendant;

e. registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the Brown Mark or any other mark that infringes or is likely to be confused with Plaintiff's Brown Mark, or any goods or services of Plaintiff, or Plaintiff as their source; and

f. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (e).

11. That the Court grant such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendant are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's products.

12. That the Court order that Defendant immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating the Brown Mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Brown Mark, and to direct all distributors,

retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendant's goods or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials featuring or bearing the Brown Mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Plaintiff's Brown Mark, and to immediately remove them from public access and view.

13. That the Court order, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendant to file with the court and serve upon Plaintiff's counsel within thirty (30) days after service on Defendant of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied therewith.

14. That the Court find that this is an exceptional case and award Plaintiff an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

15. That the Court direct Defendant account to and pay over to Plaintiff all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

16. That the Court award Plaintiff punitive and exemplary damages as the court finds appropriate to deter any future willful infringement.

17. That the Court award Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

18. That the Court award such other and further relief as the Court deems just and proper.

DATED: April 10, 2025                    GREENBERG TRAURIG, LLP

By */s/ Colin W. Fraser*

1
2   Colin W. Fraser
    Bethany Rabe
3
    Attorneys for Plaintiff
4   BLUE CHIP MACHINING, INC.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28