UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

NO JS6

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-03167-RGK-AS | Date | September 18, 2026 |
| Title | ***Blue Chip Machining, Inc. v. Scott Memmer et al*** | | |

| | | |
|---|---|---|
| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) Order Re: Blue Chip Machining, Inc.'s Motion for Default Judgment [143]**

## I. INTRODUCTION

On January 16, 2026, Plaintiff Blue Chip Machining, Inc. filed the operative Second Amended Complaint ("SAC") against Defendants Scott Memmer and Charmed Life Guitar Picks & Accessories, Inc. ("Charmed Life"), asserting four claims (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1); (2) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) unfair competition in violation of California Business & Professions Code § 1720; and (4) unfair competition in violation of California common law (SAC, ECF No. 64.)

On February 18, 2026, the Court found Charmed Life in default for failure to appear or otherwise respond to Plaintiff's SAC. (ECF No. 89.) On April 9, 2026, the Court granted Plaintiff's Motion for Summary Judgment as to all of its affirmative claims and Memmer's Counterclaims in favor of Plaintiff ("MSJ Order"). (ECF No. 122.) On August 4, 2026, the Court granted Plaintiff's Motion for Judgment, which the Court treated as a motion for partial summary judgment on the issue of damages ("Partial MSJ Order"). (ECF No. 140.)

Presently before the Court is Plaintiff's Motion for Default Judgment against Charmed Life. For the following reasons, the Court **GRANTS** Plaintiff's Motion.

## II. FACTUAL BACKGROUND

Unless otherwise stated, the following facts are undisputed on the summary judgment record (*see* MSJ Order at 2-3; Partial MSJ Order at 2):

Plaintiff manufactures and sells guitar picks made from a specific polyimide material, marketed to the public in multiple colors. Plaintiff has continuously used a brown color (the "Brown Mark") and a brown body with gold lettering (the "Brown-Gold Mark") for its polyimide guitar picks (collectively,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

NO JS6

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-03167-RGK-AS | Date | September 18, 2026 |
| Title | ***Blue Chip Machining, Inc. v. Scott Memmer et al*** | | |

the "Asserted Marks"). Plaintiff owns the trademarks for the Asserted Marks. Since 2008, Plaintiff has continuously used and marketed its picks, earning millions in gross sales.

In 2016, Memmer was aware of Plaintiff's brown polyimide guitar picks and began making "knockoff" versions of the brown polyimide guitar picks (collectively, "Accused Products"), posting on online forums that he was doing so. In November 2025, Memmer incorporated Charmed Life to continue selling the Accused Products. Defendants have manufactured, sold, offered for sale, and marketed the Accused Products online and throughout the United States. Defendants sell the Accused Products on their website, www.charmedlifepicks.com. The Accused Products are manufactured from the same polyimide material and contain brown coloration substantially similar to or the same as Plaintiff's brown polyimide guitar picks. Some of the Accused Products also incorporate brown body coloration with contrasting lighter-colored lettering substantially similar to or the same as Plaintiff's brown-gold polyimide guitar picks. The Accused Products are sold in the same trade channels as Plaintiff's products and are marketed to the same type of consumers: guitar players seeking high-quality, specialty guitar picks.

After discovering Defendants' manufacturing, sale, and marketing of Accused Products, Plaintiff initiated this action. (*See* ECF No. 1.) Whereas Memmer proceeded as a pro se litigant, Charmed Life has been in default since February 18, 2026. (ECF No. 89.) On April 9, 2026, the Court granted Plaintiff's Motion for Summary Judgment. (MSJ Order.) On August 4, 2026, the Court granted Plaintiff's Motion for Judgment, treating it as a motion for partial summary judgment on the issue of damages, and awarded Plaintiff lost profits in the amount of $227,530 and issued further injunctive relief. (Partial MSJ Order at 6-7.) The Court, however, postponed the entry of final judgment until it could resolve Charmed Life's default status. *(Id.)*

## III. <u>JUDICIAL STANDARD</u>

Federal Rule of Civil Procedure 55(b) allows a court to enter default judgment following entry of default by the Clerk when a party has failed to plead or otherwise defend a case. Fed. R. Civ. P. 55(b).

Local Rule 55-1 requires that applications for default judgment set forth the following information: (1) when and against what party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether the person is represented by a general guardian, committee, conservator or other representative; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that notice has been served on the defaulting party, if required by Federal Rule of Civil Procedure 55(b)(2). C.D. Cal. L.R. 55-1.

Entry of default, however, does not automatically entitle a plaintiff to a court-ordered judgment. *See Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986). Instead, the grant or denial of relief is

within the court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit has enumerated the following *Eitel* factors that the court should consider in granting or denying a motion for default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

In general, once default has been entered by the Clerk, all factual allegations in the complaint, except those relating to the amount of damages, will be taken as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). If a plaintiff is seeking monetary damages, it must provide evidence of its damages. *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1053–54 (C.D. Cal. 2011). It is not the duty of the Court to proffer arguments on a plaintiff's behalf; the Court "cannot manufacture arguments for a [litigant]." *See Ramsey v. Muna*, 819 F. App'x 505, 507 (9th Cir. 2020).

## IV. DISCUSSION

Plaintiff requests default judgment against Charmed Life, contending that it has satisfied both (1) the procedural requirements under Local Rule 55-1, and (2) the *Eitel* factors. The Court takes each in turn.

### A. Procedural Requirements

The Court finds the procedural requirements of Local Rule 55-1 satisfied here. Court records show that the Clerk entered default against Charmed Life on February 18, 2026. (ECF No. 89.) Plaintiff's counsel also declares that Charmed Life is neither an infant nor an incompetent person, that the Servicemembers Civil Relief Act does not apply, and that Plaintiff served notice of this Motion on August 14, 2026. (Horton Decl., ECF No. 143-1, ¶ 4.) The Court finds this declaration adequate to satisfy these factors. Plaintiff has complied with Local Rule 55-1.

### B. The *Eitel* Factors

The *Eitel* factors weigh in favor of granting default judgment. The Court addresses each factor.

#### 1. *Prejudice to Plaintiff (Factor 1)*

The first *Eitel* factor considers "whether Plaintiff will suffer prejudice if default judgment is not entered." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

The Court finds that Plaintiff will suffer prejudice if default judgment is not entered. The Court cannot enter final judgment until it resolves Charmed Life's default status. (Partial MSJ Order at 7.) Without a final judgment, Plaintiff cannot recover its lost profits or reach Charmed Life's profits realized after Memmer incorporated Charmed Life. This factor weighs in favor of default judgment.

2. *The Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint (Factors 2 and 3)*

The second and third *Eitel* factors evaluate whether Plaintiff's claim is likely to succeed on the merits and if the complaint is sufficient. *PepsiCo,* 238 F. Supp. 2d at 1175.

Here, the merits and complaint factors are satisfied, as the Court has already granted summary judgment on the identical claims presented in this case on a ruling that is binding on both Defendants. (MSJ Order at 11–12; Partial MSJ Order at 6–7.)

3. *The Sum of Money at Stake (Factor 4)*

The fourth *Eitel* factor weighs whether the sum of money at stake in the action is proportionate to the seriousness of the conduct. *PepsiCo*, 238 F. Supp. 2d at 1176–77. If the sum is proportionate, this factor supports granting default judgment. *Id*.

Plaintiff proved its damages of $227,530 in its motion for partial summary judgment. (Partial MSJ Order. at 6.) In awarding damages to Plaintiff, the Court concluded that the damages amount was justly proportional to the seriousness of the conduct. *(Id.)* As a result, the Court finds this factor in favor of default judgment.

4. *The Possibility of a Dispute Concerning Material Facts (Factor 5)*

The fifth *Eitel* factor considers the possibility of a dispute concerning material facts. *PepsiCo*, 238 F. Supp. 2d at 1177.

As noted in the second and third *Eitel* factors, the Court has already entered summary judgment as to Defendant's liability and damages. (MSJ Order.) Accordingly, there is no possibility of a dispute of material fact. The fifth factor favors default judgment.

5. *Whether Default Was Due to Excusable Neglect (Factor 6)*

The sixth *Eitel* factor addresses whether the default resulted from excusable neglect. *PepsiCo*, 238 F. Supp. 2d at 1177.

Here, Memmer litigated this case on the merits as a pro se litigant. In his answer to the SAC, Memmer stated that "Charmed Life was incorporated . . . to run the business formerly run as a sole proprietorship." (Memmer's Answer to SAC, ECF No. 85 at 7.) Charmed Life thus represents a continuation of Memmer's sole proprietorship business selling Accused Product. The Court finds that, based on Memmer's awareness of and participation in this action, specifically as to Charmed Life's own liability, there is no excusable neglect as to Charmed Life.

Additionally, Memmer attempted to file an Answer to the SAC on Charmed Life's behalf, which was ultimately stricken for procedural deficiencies. (ECF Nos. 77, 80.) Charmed Life's attempted answer further demonstrates that its default was not based on lack of notice. The sixth factor weighs in favor of default judgment.

6. *The Strong Policy Favoring Decisions on the Merits (Factor 7)*

The seventh *Eitel* factor considers the strong policy favoring decisions on the merits. *See PepsiCo*, 238 F. Supp. 2d at 1177. Although "cases should be decided on the merits whenever reasonably possible, Rule 55(a) allows a court to decide a case before the merits are heard if the defendant fails to appear and defend." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 922 (N.D. Cal. 2010). As a result, a defendant's default does not prevent the Court from granting relief. *See id*.

The Court has already granted Plaintiff's Motion for Summary Judgment on the merits as to both Defendants. (MSJ Order; Partial MSJ Order.) Accordingly, the Court adjudicated Plaintiff's claims against Charmed Life on the merits. Moreover, because Charmed Life failed to appear before the Court, this factor does not weigh against finding default judgment.

All factors weigh in favor of default judgment. Thus, under the totality of the circumstances, the Court finds that default judgment is appropriate.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Default Judgment.

The Court **AWARDS** Plaintiff damages and **ENJOINS** Defendants consistent with the award and permanent injunction terms ordered in the Court's MSJ Order and Partial MSJ Order, which are incorporated by reference here. (MSJ Order; Partial MSJ Order.)

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer JRE